REXFORD G. TUGWELL, GOVERNOR OF PUERTO RICO, substituted by JESÚS T. PIÑERO, Petitioner and Appellant, v. MANUEL A. BARRETO, MAYOR OF MAYAGÜEZ, Respondent and Appellee.

No. 19. Argued January 13, 1948.—Decided February 6, 1948.

*Luis Negrón Fernández, Attorney General, José C. Aponte, Special Prosecuting Attorney at Large,* and *Guillermo A. Gil, Assistant Attorney General,* for appellant. *Francisco M. Susoni, Jr., José Rafael Gelpí* and *Mario Figueroa del Rosario* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

On October 11, 1945 the Governor preferred charges against the Mayor before the Municipal Assembly of Mayagüez. The Municipal Assembly acquitted him twice: first, by erroneously applying the doctrine of *res judicata*[1]; second, by granting a demurrer filed against the first four charges and acquitting him of the fifth and last after hearing the evidence which the Governor presented in support of said charge and before the Mayor presented his evidence. The appeal taken by the Governor was dismissed as to the fifth charge because the transcript of the evidence sent up was certified by the President and not by the Municipal Assembly in full; but the decision was reversed as to the first four charges. Consequently, the case was remanded to the Assembly with instructions to forthwith hear the parties in support of said four charges and to decide the case on its merits.[2] We have now before us the decision of the Municipal Assembly acquitting the Mayor on the merits of the case.[3]

It is alleged in the first charge that the Mayor leased to Francisco P. Cintrón the public square of Mayagüez and its adjacent streets and the public streets of wards Balboa and Playa of the same municipality, without holding the public auction required by law, the said square and streets to be used for the installation of amusement devices for the festival to celebrate the anniversary of the patron saint which was held from January 22 until February 2, 1945.

The second charge alleges that the Mayor allowed the rental which amounted to $5,000.04, to be withheld by

[1] This decision was reversed in *Tugwell, Governor* v. *Barreto,* 65 P.R.R. 469.

[2] *Tugwell, Governor* v. *Barreto,* 67 P.R.R. 512.

[3] The decision was eight to five.

Matilde Nadal Ramírez[4] and Miguel A. Yáñez, without depositing it in the Municipal Treasury.

In the third he is accused of having permitted and authorized that said amount be spent in matters which were not legitimate expenditures of the Municipality of Mayagüez without the authorization of the Municipal Assembly.

The fourth gives an account of some disbursements which it is alleged were illegally made by the Mayor.

 In its decision the Municipal Assembly found that the Entertainment Committee granted a permit to Francisco P. Cintrón for the installation of wheels of fortune, merry-go-rounds and other amusement devices in the streets around Plaza Colón of that city and in the wards Balboa and Playa and Salud Street for the amount of $5,000.04; that in evidence of the payment of this amount a receipt was delivered signed by Mrs. María (Matilde) Nadal de Vidal, President of the festival to celebrate the anniversary of the patron saint, by Mr. Miguel A. Yáñez, Treasurer of the Committee, and by the Mayor Manuel A. Barreto[5]; that this permit was granted without holding a public auction and that its price was agreed between Mrs. Vidal and Mr. Cintrón; that besides the amount of the rent they collected the amount of $876.50 from advertisements published in the program of the festival; that the $5,000.04 as well as the $876.50 were deposited in the "Fund for the festival to celebrate the

---

[4] It appears from the evidence that the correct name of this lady is Matilde Nadal de Vidal.

[5] This receipt read thus:

"Mayagüez, Puerto Rico,—December 12, 1944.—Received from Don Francisco P. Cintrón the amount of FIVE THOUSAND DOLLARS ($5,000.00) as lease rental of PLAZA COLON and other grounds of the city of Mayagüez situated in Balboa and La Playa for the installation of public amusements and lawful games during the celebration of the festival of the anniversary of the patron saint in 1945; it being understood that Mr. Cintrón shall have the exclusive right to operate the business for the duration of the festival.—COMMITTEE OF ENTERTAINMENT OF THE FESTIVAL OF THE ANNIV. RSARY OF THE PATRON SAINT OF 1945.—Matilde Nadal de Vidal.—President.—(Signed) Matilde Nadal de Vidal.—Miguel A. Yáñez, Treasurer.—(Signed) Miguel A. Yáñez.—O. K. (Signed) M. A. Barreto.—Manuel A. Barreto, Mayor of Mayagüez."

anniversary of the patron saint of Mayagüez'' in the Crédito y Ahorro Ponceño Bank, branch of that city; that the expenses for the festival were paid by checks drawn against that account signed by the Treasurer of the Entertainment Committee, Mr. Yáñez, who was also Collector of Internal Revenues of Mayagüez; that at the suggestion of Mrs. Vidal and subject to the condition that at 'the end of the festival there should be a superavit of not less than $1,000 for the Asylum of the Poor, which was a municipal institution, it was agreed to make a gift of $500 to the Committee of Partido Popular Democrático to be credited to the debt which it had incurred with the bank for election expenses and that said amount should be paid from the proceeds of the advertisements published in the program; that it was customary in the Municipality of Mayagüez and in all the others of the Island, including the Government of the Capital, to consider these activities of the patronal festival as foreign to the functioning of the municipality and its funds are not considered as income of the Municipal Government; that the respondent did not perform any act detrimental to the interest of the municipality, nor did he profit personally by authorizing the Entertainment Committee to dispose of said funds as it deemed fit in connection with said festival; that the Auditor of Puerto Rico had not promulgated any regulation in connection with the patronal festival, for which reason, the Municipal Assembly believed that he had impliedly authorized the practice of considering these festivals as foreign to the administration of the Municipal Government and cites a letter from the President of the Senate, of December 6, 1945 [6];

---

[6] The letter from Mr. Luis Muñoz Marín, addressed to the President of the Association of Mayors, in its pertinent part, reads thus:

''. . . I also spoke to Mr. Cordero, the Auditor, about the festival to celebrate the anniversary of the patron saint and as to the legality of providing funds for the Association of Mayors. I explained to him that evidently some of the Mayors had not acted in strict accordance with the legal proceeding in making arrangements for the use of the public squares for the festival. No one makes any comment on the matter until some enemy of the Mayor has an interest in

that the gifts, prizes, etc., included in the festival program were distributed; that the conduct of the Mayor has always been correct and inspired in an earnest desire to benefit the municipality; that the evidence admitted in support of the complaint merely shows administrative irregularities; and, finally, that the assembly considers that the evidence presented in support of the charges does not warrant the removal of the Mayor.

The majority of the assembly, as we have seen, found that the contract of lease or permit to use the public grounds, was made without the holding of a public auction; that those funds were not deposited in the municipal treasury and that checks against that amount were drawn by persons who had no participation in the municipal administration. But there is still something more serious that the majority of the assembly has hushed in stating its conclusions of fact and which was proved with the uncontroverted evidence of the Governor, to wit: that from the proceeds of the patronal festival $500 were taken to be credited to the Crédito y Ahorro Ponceño in payment of an obligation for which the Mayor, Miguel A. Yáñez, and others were responsible, which debt was incurred in order to meet the expenses of the Partido Popular for the electoral campaign of 1944. Two checks for $250 each were drawn. One of them to the order of Miguel A. Yáñez, who was the treasurer of the Finance Committee of the Partido Popular. The other to the order of Manuel A. Barreto, who was president of said committee. And it is significant

---

creating difficulties for him and then, for motives which may seldom be considered good, a conflict arises. I asked the Auditor to make an investigation in all those cases he deemed fit but in all those cases where festivals to celebrate the anniversary of the patron saint were held before his memorandum, he should go over the evidence to see whether there was bad faith in the proceeding, and if it clearly appears that there was not, to merely call the attention of the Mayor concerned and explain to him the procedure he should follow. The Auditor agreed to do so. Of course, the Mayors should be careful to avoid any technical violation of the statute hereafter in this respect as well as in others. . .''

that these checks which could have been endorsed to the Crédito y Ahorro Ponceño were deposited in their private accounts, and later each one issued a personal check for $250 to the order of the Finance Committee of the Partido Popular, which, in turn, on the same day drew a check for the amount of $500 to the order of the Crédito y Ahorro Ponceño in payment of the aforesaid obligation.[7] Notwithstanding this evidence, the majority of the Assembly decided that these were merely irregularities which had caused no prejudice whatsoever to the Municipality of Mayagüez and intimated that those $500 were taken from the $876.50 which were the proceeds of the advertisements in the festival program.[8]

The majority of the Assembly tries to find support for not having called for bids, on the theory that such was the custom in Mayagüez as well as in other municipalities including the Government of the Capital, and it cites the letter from the President of the Senate.[9] Supposing that the disuse, custom or practice to the contrary could prevail

---

[7] This fact is sustained by the testimony of the Manager of the Crédito y Ahorro Ponceño, of Miguel A. Yáñez and by checks Nos. 47 and 48 for $250.00 each issued to the order of Miguel A. Yáñez and Manuel A. Barreto, respectively, by Mr. Yáñez, Treasurer of the Committee of Entertainment. The explanation given for this round-about by Mr. Yáñez is that he, as well as Barreto, believed "that it did not look right to draw a check in the name of the Committee of the Party."

[8] The record reveals, however, that the cost of the program amounted to $453.40, according to the following checks signed by Mr. Yáñez, Treasurer of the Entertainment Committee:

| | |
|---|---:|
| Check No. 1 | $100.00 |
| Check No. 15 | 300.00 |
| Check No. 28 | 10.00 |
| Check No. 34 | 5.00 |
| Check No. 50 | 38.40 |
| Total | $453.40 |

After deducting $453.40, which was the cost of the program, from $876.50 which was the proceeds of the advertisements, there only remains $423.10 which shows that the $500.00 were not paid totally from the proceeds of the advertisements published in the program.

[9] See footnote 6.

against the law,[10] which we deny, because it is expressly prohibited by § 5 of the Civil Code, we would have to decide that the finding of the Assembly, in regard to the custom, is not sustained by the evidence presented. Evidently the existence of such a custom is not proved by the letter of Mr. Muñoz Marín to which the Assembly attaches so much importance. We quote from said letter: "I also spoke to Mr. Cordero, the Auditor, about the patronal festival . . . I explained to him that evidently *some of the Mayors* had not acted in strict accordance with law in making arrangements for the use of the public squares for the festival." (Italics ours.) It can not be inferred from this statement that it was a custom that "in all the municipalities of the Island . . . the festival for the celebration of the anniversary of the patron saint and its funds were not considered as income of the municipal government." What the letter really shows is the exception, a number of mayors—we cannot tell how many of them, or when—have violated the law. But this is not all. The Governor offered in evidence, and it was admitted without objection, the notices of public auction for the lease of the square and public grounds of the city of Mayagüez to have a festival to celebrate the anniversary of the patron saint during 1943 and 1944, published in "La Democracia", according to an affidavit of its Manager. The notice of public auction for the patronal festival of 1944 reads thus:

---

[10] As to the necessary requirement of a public auction, subdivision 5 of § 8 of the Municipal Law, (Act No. 53 of April 28, 1928) provides in its pertinent part:

"5. No municipal property shall be. . . leased. . . or otherwise disposed of except at public sale, unless otherwise expressly authorized by this Act. . ." (Italics ours.)

And as to the duties of depositing the funds in the Municipal Treasury, § 3(a) of the Regulations for the System of Municipal Accounting enforced since July 1, 1937, insofar as pertinent, provides:

"The Municipal Treasury shall dispose of all the funds pertaining to the Municipality or in the custody of the latter in a bank duly incorporated (agency or branch thereof) to be designated by the Administrative Board in an order to that effect, and all deposits shall be protected as provided by this regulation. . ."

"MUNICIPALITY OF MAYAGÜEZ.—Office of the Mayor.—NOTICE OF PUBLIC AUCTION.—The Board of Public Auctions of the Municipality of Mayagüez shall receive bids until January 3, 1944, at 2 : 45 P. M. for the lease of the Plaza de Colón and other grounds of the city for the installation of public performances and games authorized by law for the celebration of the festivals of Candlemas Day which shall take place from January 23, 1944 to February 2 of the same year.

"The blanks for the conditions and specifications may be obtained in the Office of the Municipal Secretary.—MANUEL A. BARRETO.—Mayor.—Mayagüez, Puerto Rico.—December 18, 1943.[11]

We do not see how they could have alleged the existence of such a custom when during the two years preceding 1945, the very same Mayor through the Board of Public Auctions, complied with the legal requirement of a public auction for the lease of those public places. What justifiable reason could the Mayor advance for not following in 1945 the same procedure he had followed in 1943 and 1944? The record does not give any explanation for abandoning the procedure provided by law.

Respondent's attorney, both in his brief and oral argument, tries to minimize the importance of the charges, and argues that the squares and streets of a municipality may not be subject to a contract of lease. He assumes therefrom that the proceeds of said lease do not constitute a municipal fund and hence that it does not have to be deposited in the Municipal Treasury.

That there is no legal impediment to lease the squares and streets for the erection of booths and amusement devices, is evident from subdivision "f" (6) and (7) of § 43 of the Municipal Law, as amended by § 11 of Act No. 98 of 1931, pages 594, 616.[12]

---

[11] The notice for bids for the festival of 1943 also signed by the respondent Mayor is substantially the same as the one copied above.

[12] This subdivision reserves to the municipalities the power to levy any excise, license or tax of any other class which shall be decreed by the corresponding municipal assembly, on:

"6. Licenses to place chairs for hire, or booths, in public places;

"7. Licenses for entertainments or public spectacles."

In any event, as we said in *Tugwell, Governor* v. *Barreto,* 67 P.R.R. 512:

"For the purpose of this opinion it is unnecessary to decide whether the property devoted to public use may be subject to a contract of lease. Assuming that it is, it cannot be leased without first complying with the requirement of a public auction; and supposing that it could not be subject to lease it is alleged that it was leased. Under either hypothesis the Mayor acted in violation of the law."

For the reasons stated the decision of the Municipal Assembly of Mayagüez rendered on November 7, 1947 shall be reversed and the removal of the Mayor is hereby ordered.